# IN THE COURT OF APPEALS 04/08/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-KA-00939 COA

## CONSOLIDATED WITH

## 96-KA-00147

**JEFFERY MITCHELL A/K/A JEFFREY MARCUS MITCHELL**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JOHN H. WHITFIELD

COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

MICHAEL CROSBY

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE

DISTRICT ATTORNEY: CONO CARANNA

NATURE OF THE CASE: CRIMINAL: MURDER

TRIAL COURT DISPOSITION: CONVICTION OF MURDER; SENTENCED TO LIFE IN CUSTODY OF MDOC

CERTIORARI FILED: 7/1/97

MANDATE ISSUED: 10/16/97

BEFORE BRIDGES, C.J., HERRING, AND PAYNE, JJ.

HERRING, J., FOR THE COURT:


Appellant Jeffrey Mitchell was convicted of murder in the Circuit Court of Harrison County on or about September 1, 1995. He was thereafter sentenced to life imprisonment in the Mississippi Department of Corrections. Mitchell now appeals the judgment and sentence and assigns the following errors:

> I. THE COURT ERRED IN ALLOWING THE STATE TO PROCEED ON AN ALTERNATIVE THEORY OF MURDER WHEN THE INDICTMENT SPECIFIED ANOTHER THROUGH CITING A SPECIFIC CODE SECTION.

> II. THE COURT ERRED IN ALLOWING INTO EVIDENCE, THE HEARSAY DECLARATIONS OF STATE'S WITNESS CHERYL BRIDGES OVER THE OBJECTION OF THE DEFENDANT.

> III. THE COURT ERRED WHEN IT ALLOWED INTO EVIDENCE PROOF OF OTHER CRIMES.

> IV. THE COURT ERRED IN GRANTING THE STATE'S INSTRUCTION AS TO AIDING AND ABETTING WHEN IT WAS NOT SUPPORTED BY THE EVIDENCE.

> V. THE COURT ERRED IN FAILING TO PROPERLY INSTRUCT THE JURY AS TO THE CORRECT BURDEN OF PROOF.

Finding no error, we affirm.

## FACTS

During the early morning hours of February 14, 1993, a shooting involving a .9 millimeter pistol and automatic weapon, took place at the Flamingo Lounge, a local night club located just north of the City of Gulfport, Mississippi. The Defendant/Appellant, Jeffrey Mitchell, drove his automobile by and stopped at or near the nightclub, to check his vehicle for bullet holes, since he testified that he had

heard gunshots as he passed by the Flamingo a few minutes earlier. According to Mitchell, he and the companions in his vehicle, David Lee and Robert Kennedy, had been drinking, and he was intoxicated.

As Mitchell got out of his car, a crowd of people gathered around his vehicle. Mitchell attempted to disperse the crowd by firing his pistol into the ground. When he failed to disperse the crowd, he then removed an assault rifle from the trunk of his vehicle and began firing in the direction of the Flamingo Lounge. According to Mitchell, he heard other shots being fired, and he was firing up in the air to avoid hitting anyone. Meanwhile, the Appellant's passenger, David Lee, took the other assault weapon which had been in the trunk of the Mitchell's vehicle, and also began shooting.

At some point, Mitchell became aware that Larry Dotson, a patron inside the Flamingo, had been struck with a bullet in the neck and was lying inside the lounge in a pool of blood. At this time, Mitchell and his two passengers left the scene of the shooting and wound up at Mitchell's apartment. According to Robert Kennedy, who testified that he did not participate in firing any weapons, Mitchell and David Lee washed their hands with alcohol in order to remove remnants of any powder burns on their hands and made Kennedy wash his hands also. Larry Dotson, the lounge patron, was pronounced dead when law enforcement officers reached the scene.

Mitchell testified that he had been shooting his weapons either in the ground or up in the air, in order to avoid hitting anyone. He further stated that he was only trying to scare the crowd of people converging on him, which, he stated, included some people that had shot him at an earlier time. Robert Kennedy testified he saw no one shooting other than Mitchell and Lee, and that at one point, he heard Mitchell say that he must have hit someone because there was a man who had been shot lying in the doorway.

The jury subsequently found Mitchell guilty of murder.

ANALYSIS

I. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO PROCEED ON AN ALTERNATIVE THEORY OF MURDER WHEN THE INDICTMENT SPECIFIED ANOTHER THROUGH CITING A SPECIFIC CODE SECTION?

Mitchell was indicted specifically under section 97-3-19(a) of the Mississippi Code of 1972 as shown in the indictment. The body of the indictment reads, in pertinent part:

> Jeffrey Marcus Mitchell, Donald Ray Lee and Robert Angus Kennedy . . . did wilfully, feloniously and without the authority of law, kill and murder Larry Dotson, a human being, with deliberate design to effect the death of Larry Dotson, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

Section 97-3-19 states:

(1)The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

> (a) When done with deliberate design to effect the death of the person killed, or of any human being;

> (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual . . . .

Mitchell claims that since he was indicted specifically under section 97-3-19(1)(a), the State should have been estopped from convicting him under section 97-3-19(1)(b). In support of this position, Mitchell cites Article 3, Section 27 of the Mississippi Constitution of 1890 and the case of *Quick v. State*, 569 So. 2d 1197 (Miss. 1992). Article 3, Section 27 of the Mississippi Constitution requires that a person shall not be prosecuted except upon an indictment by a grand jury. A court has no power or authority to modify or amend the indictment in any material respect. *Quick*, 569 So. 2d at 1199. *See also Van Norman v. State*, 365 So. 2d 644 (Miss. 1978) and *Kemp v. State*, 121 Miss. 580, 83 So. 744 (1920).

In *Quick*, the defendant was indicted under subsection (b) of the aggravated assault statute, which requires intentional actions by the accused party in order for that person to be found guilty. However, *Quick* was convicted under subsection (a) of the aggravated assault statute, which requires recklessness "under circumstances manifesting extreme indifference to the value of human life." *See* Miss. Code Ann. § 97-3-7(2)(a) and (b) (1972). Our supreme court held that the defendant was convicted on a "new element which was not contained in the original indictment . . . . Under these circumstances, we have no alternative but to reverse and remand . . . ." *Quick*, 569 So. 2d at 1200. However, as stated in section 99-7-37 of the Mississippi Code of 1972:

> [I]n an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased . . . .

Moreover, the Mississippi Supreme Court in *Mallett v. State*, 606 So. 2d 1092, 1095 (Miss. 1992), speaking on the issue raised by Mitchell as to how section 97-3-19 should be interpreted, stated:

> [T]here is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. *Our cases have for all practical purposes coalesced the two so that Section 97-3-19*

*(1)(b) subsumes (1)(a)* . . . .

*Mallett*, 606 So. 2d at 1095 (emphasis added).

Mitchell's argument that section 97-3-19 should be dealt with the same way that *Quick v. State* deals with the aggravated assault statute was recently rejected by our supreme court in *Catchings v. State*, 684 So. 2d 591 (Miss. 1996). Citing *Mallett v. State*, the court specifically held that the *Quick* decision in regard to the aggravated assault statute did not apply to murder cases and held, once again, that subsections (a) and (b) of the murder statute had "coalesced." *Catchings*, 684 So. 2d at 599.

Therefore, in light of the rule set forth in *Catchings v. State*, we cannot say that the trial court erred in allowing the State to proceed under section 97-3-19(1)(b).

> II. DID THE TRIAL COURT ERR IN ALLOWING INTO EVIDENCE THE HEARSAY DECLARATIONS OF STATE'S WITNESS, CHERYL BRIDGES, OVER THE OBJECTION OF THE DEFENDANT?

During the trial, the State called Cheryl Bridges to testify. The State expected her to testify as an eyewitness, identifying Mitchell as one of the men who fired upon the Flamingo Lounge. However, at trial, Bridges refused to testify and said she could not remember implicating Mitchell in the shooting in a statement to prosecutors on the previous day. After this refusal, the trial court, over defense objections, allowed the State to present statements to the jury made by Bridges on the previous day, through the testimony of David Steprow, an investigator for the district attorney's office, who heard these statements when they were made. Mitchell claims that the testimony of Steprow should have been excluded as hearsay.

The State contends that the trial court was correct in allowing the testimony because the statement was admissible by virtue of Mississippi Rule of Evidence 607 which allows a party to impeach its own witness. The State argues that this testimony was entered not to prove the truth of the matter asserted, but rather to impeach the witness, relying on the recent case of *Bush v. State*, 667 So. 2d 26, 28 (Miss. 1996), a case which has facts similar to the case *sub judice*. In *Bush*, our Mississippi Supreme Court held that a witness's prior inconsistent statements could be admitted through a police officer if (1) the witness refused to testify and (2) a proper predicate was laid as to the prior statement. Specifically, the State must ask the witness "whether or not on a specific date, at a specific place, and in the presence of a specific person, the witness made a particular statement." *Bush*, 667 So. 2d at 28 (citations omitted). A reading of the record indicates that a proper predicate was laid. Thus, the testimony of Cheryl Bridges was properly admitted under *Bush*.

> III. DID THE TRIAL COURT ERR IN ALLOWING EVIDENCE OF OTHER CRIMES?

During the trial, the State called Robert Kennedy, one of Mitchell's companions, as a witness. During the questioning by the prosecutor, the following exchange took place:

> By Mr. Simpson:
>
> Q. Describe exactly what happened when you stopped the car.
>
> A. When we pulled up to the club, a lot of people that was standing out around the club started coming around to his car.
>
> Q. Okay.
>
> A. To purchase drugs and . . . .

At this point, Mitchell objected and moved for a mistrial. The trial court overruled the objection, and denied the motion for a mistrial, thereby admitting the statement into evidence as a "present sense" impression pursuant to Mississippi Rule of Evidence 803 (1). The court further ruled, despite strenuous objections by Mitchell, that the statement of Kennedy concerning the drugs was not overly prejudicial when applying the balancing test between evidence otherwise admissible but highly prejudicial, as set out in Mississippi Rule of Evidence 403.

Under our supreme court's standard of review, the admissibility of evidence rests within the discretion of the trial court. *Peterson v. State*, 671 So. 2d 647, 655 (Miss. 1996). Moreover, "the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." *Id.* at 656 (citing *Parker v. State*, 606 So. 2d 1132, 1137-38 (Miss. 1992)); *see also* M.R.E. 103.

From the record before us, we cannot say that the trial court abused its discretion in allowing the statement of Kennedy to be considered by the jury. While Mississippi has adopted the general rule that proof of wrongdoing distinct from the crime alleged in the indictment should not be admitted into evidence against a defendant,

> there are certain well established exceptions to this rule. Where the other crime admitted into evidence is connected with the one charged in the indictment, and proof of such other crime sheds light upon the motive of the defendant for the commission of the crime charged in the indictment, or where the fact of the commission of such other crime forms a part of the chain of facts so intimately connected that the whole must be heard in order to interpret its general parts, then evidence of other crimes is admissible.

*See Davis v. State*, 530 So. 2d 694, 698 (Miss. 1988); *see also Townsend v. State*, 681 So. 2d 497, 506 (Miss. 1996); and *Mackbee v State*, 575 So. 2d 16 (Miss. 1990). Moreover, the statement of Kennedy is admissible pursuant to Mississippi Rule of Evidence 404(b), since it helps to explain why

a crowd of people converged upon the Appellant's vehicle when he stopped at the Flamingo. As stated in the official comment to Rule 404(b):

> [e]vidence of another crime, for instance, is admissible where the offense in the instant case and in the past offense are so inter-connected as to be considered part of the same transaction. *Neal v. State*, 451 So. 2d 743 (Miss. 1984). (Emphasis added).

## IV. DID THE TRIAL COURT ERR IN GRANTING THE STATE'S INSTRUCTION AS TO AIDING AND ABETTING WHEN IT WAS NOT SUPPORTED BY THE EVIDENCE?

After testimony had been completed, the trial court granted Instruction 8, which provided:

> The court instructs the jury that each person present at the time and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hands committed the whole offense.

This instruction sets out the familiar legal principle that one who is present when a criminal offense is committed and who aids, counsels or encourages another in committing the offense is equally as guilty of the crime as is the principal offender. *Swinford v. State*, 653 So. 2d 912, 915 (Miss. 1995).

In the present case, Mitchell was admittedly present and involved in the shooting, together with Lee and Kennedy. Both Mitchell and Lee, and perhaps Kennedy, fired high powered weapons in the direction of the Flamingo Lounge. According to the testimony, it was never established as to what kind of bullet killed Dotson, who was found in a pool of blood at the doorway of the lounge. However, Mitchell was present at the scene and participated in a shootout with his companions that predictably led to the loss of human life. Thus, Instruction 8 was properly granted for consideration by the jury.

## V. DID THE TRIAL COURT ERR IN FAILING TO PROPERLY INSTRUCT THE JURY AS TO THE CORRECT BURDEN OF PROOF?

In his final assignment of error, Mitchell claims that the trial court incorrectly instructed the jury on the burden of proof which the prosecution had to overcome in order for the Mitchell to be found guilty. Specifically, Mitchell claims that in order for him to be found guilty, the State had to prove his guilt beyond "all" reasonable doubt and not simply beyond "a" reasonable doubt. Accordingly, the Mitchell objected to all instructions which placed the burden upon the State to prove his guilt beyond

a reasonable doubt. The trial court overruled the Mitchell's objection, although the court did grant Mitchell's Instruction 4, which stated:

> The court instructs the jury that you are bound, in deliberating upon this case, to give the defendant of *any* reasonable doubt of the defendant's guilt that arises out of the evidence or want of evidence in this case.

(Emphasis added).

The Mississippi Supreme Court has ruled for many years that the State's burden is to prove the defendant's guilt beyond a reasonable doubt. *Allman v. State*, 571 So. 2d 244, 252 (Miss. 1990); *Russell v. State*, 220 So. 2d 334, 338 (Miss. 1969). Mitchell cites no cases which hold that such holdings are in error. On the other hand, he cites authority, including *Hale v. State*, 648 So. 2d 531, 536 (Miss. 1994), where the use of the term "all reasonable doubt" in defining the State's burden of proof have been ruled to be acceptable language. *See Taylor v. State*, 682 So. 2d 359, 362 (Miss. 1996), for a recent example, where our Supreme Court has approved the "beyond a reasonable doubt" standard. *See also Williams v. State,* 667 So. 2d 15, 24 (Miss. 1996).

Mitchell invites the court to set a new standard and henceforth require the State to prove a defendant's guilt "beyond *all* reasonable doubt." We decline to do so. In the case *sub judice*, we hold that the jury was adequately instructed on the State's burden of proof, especially in light of Mitchell's Instruction 4.

**THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.**

**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., NOT PARTICIPATING.**